CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
August 07, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ S. Wray
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **LUANN DELOSREYES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No.: 7:24-cv-00525 |
| | ) |
| **BOTETOURT COUNTY PUBLIC SCHOOLS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

Plaintiff LuAnn Delosreyes was demoted from her position as administrative assistant to Defendant Jonthan Russ, Superintendent of Botetourt County Public Schools, to an instructional assistant after she disclosed a pending pay raise of another employee and critiqued administrators. She asserts claims against Russ, in his official and individual capacities, Botetourt County Public Schools, The School Board for Botetourt County Public Schools, and the members of the School Board, in their official and individual capacities. Delosreyes alleges the Defendants violated her due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 11 of the Virginia Constitution and her right to free speech under the First Amendment of the United States Constitution and Article I, Section 12 of the Virginia Constitution. She also alleges that her demotion breached her employment contract. All Defendants move to dismiss Delosreyes's claims in their entirety. For the reasons below, Defendants' motion is **GRANTED in part and DENIED in part.**

## FACTS

Plaintiff LuAnn Delosreyes worked as Executive Assistant to Defendant Jonathan Russ, Superintendent for Botetourt County Public Schools, for approximately four years. Her 2022–2023

contract entitled Delosreyes to an annual salary of $60,399.00 and provided that she could only be dismissed by the School Board for "just cause." Dkt. 45 ¶ 16. It also stated that she had "the right to ask for a hearing before the School Board in such cases." *Id.*

On or around August 4, 2022, Delosreyes "discussed with [The School Board for Botetourt County Public Schools][1] employees the impending raise of another . . . employee[.]" *Id.* ¶ 20. She noted that "the raise was not deserved and therefore was not an appropriate expenditure of public funds." *Id.* Delosreyes asserts "upon information and belief" that the "BCPS employees with whom Plaintiff discussed the impending pay raise already were aware of the impending pay raise by virtue of their jobs." *Id.* She also asserts that her "speech did not interfere with or undermine the operations of [BCPS]." *Id.* ¶ 23. Around the same time, Delosreyes responded to a text from another BCPS employee asking "[i]f the first day of school [i]s… like it is every year—a total shift [sic] show?" or words to that effect. *Id.* ¶ 24.

On August 11, 2022, Russ notified Delosreyes, by letter, that, effective immediately, she was being placed on administrative leave with pay "due to a breach of confidentiality in the workplace and unprofessionalism." Dkt. 45 ¶ 17. The letter also barred Delosreyes from being "present on any Botetourt County Public Schools property." Dkt. 48-3. On August 23, 2022, Delosreyes received an "official notice of reprimand and reassignment." *Id* ¶ 26.

On or around August 23, 2022, Russ provided Delosreyes an "official letter of reprimand and notification of reassignment" stating that "she had 'breached confidentiality by sharing a photo of a proposed pay scale for an employee in our office with coworkers' 'before the proposed pay scale was approved by our school board," and engaged in unprofessionalism by describing the central

---

[1] The Parties appear to use BCPS to refer to the Defendant The School Board for Botetourt County Public Schools. To avoid confusion, I will also use BCPS to refer to The School Board for Botetourt County Public Schools.

2

office administrators' visit as a "total shit show." Dkt. 43 at 4. The letter stated that Delosreyes would be reassigned to an instructional assistant position for the remainder of her 2022–2023 contract and warned that "'[s]hould [her] contract be renewed for the 2023–2024 school year, it would be renewed as a 182 day instructional assistant (Grade 510).'" Dkt. 48-2.

At the same time, Delosreyes alleges she was "given and forced to sign a new contract for the current (i.e., 2022–2023) school year, effective August 24, 2022, listing her job/position as "Instructional Assistant." Dkt. 45 ¶ 31. She alleges that she was "required to execute her new contract prior to her deadline to grieve her reprimand and reassignment," which breached her original contract. *Id.* ¶¶ 32–33.

On August 25, 2022, Delosreyes grieved Russ's letter of reprimand and reassignment. *Id.* ¶ 34. Despite BCPS policy permitting support staff to "file a written request for a hearing with the superintendent" in the event of disciplinary action, no Defendant "acknowledged, responded to, or otherwise addressed Delosreyes' grievance" and "she was never given an opportunity to defend herself or offer an explanation…." *Id.* ¶¶ 36, 39–40.

On September 9, 2022, BCPS's Director of Human Resources & Health Services, Tim McClung, notified Delosreyes that the School Board approved her reassignment as an instructional assistant effective August 24, 2022. *Id.* ¶ 41. The change to an instructional assistant did not affect her salary which remained unchanged throughout the 2022–2023 school year. Delosreyes alleges that Russ "hired a new executive assistant prior to the School Board approving her reassignment/demotion." *Id.* ¶ 42.

For the 2023–2024 school year, Delosreyes accepted a new contract for the position of instructional assistant at an annual salary of $21,727. *Id.* ¶¶ 45, 47. Under her contract for the 2024–2025 school year for a position of instructional assistant, Delosreyes earned $27,117. *Id.* ¶¶ 46–47.

Delosreyes filed this Complaint in August 2024. She asserts the following claims:

<u>Count I – Due Process Violation, U.S. Constitution</u>. Delosreyes alleges that Defendants violated her due process rights guaranteed by the Fifth and Fourteenth Amendments of the Constitution by failing to afford her a meaningful opportunity to challenge her demotion.

<u>Count II – Due Process Violation, Virginia Constitution</u>. Delosreyes alleges that Defendants violated her due process rights under Article I, Section 11 of the Constitution of the Commonwealth of Virginia by failing to afford her a meaningful opportunity to challenge her demotion.

<u>Count III – Violation of Right to Free Speech, U.S. Constitution</u>. Delosreyes alleges that Defendants violated her First Amendment right to free speech by demoting her for speech concerning the "wages of government employee and the operation of the government."

<u>Count IV – Violation of Right to Free Speech, Virginia Constitution</u>. Delosreyes alleges that Defendants violated her right to free speech under Article I, Section 12 of the Constitution of the Commonwealth of Virginia by demoting her for speech concerning the "wages of government employee and the operation of the government."

<u>Count V – Breach of Contract.</u> Delosreyes alleges that Defendants breached her employment contract by forcing her to sign a new contract for a different position.

Defendants moved to dismiss Delosreyes's Complaint under Federal Rule of Civil Procedure 12(b)(6).

## STANDARD OF REVIEW

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable

inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Legal conclusions, however, are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 679.

## ANALYSIS

I.     **Due Process Claims (Counts I and II)**

Defendants move to dismiss Delosreyes's due process claims on the grounds that Delosreyes did not have a property interest in her role as an executive assistant. They argue that the Fourth Circuit has held that public employees only have a property interest in continued employment generally, not in a specific job title or set of responsibilities. Thus, because Delosreyes was merely transferred from the superintendent's offices and not terminated, she is not entitled to protection under the due process clause. Dkt. 43 at 6. Delosreyes counters that she has a constitutionally protected interest in her role as executive assistant to the superintendent created by her employment contract and BCPS's employment procedures. I agree and find that Delosreyes has plausibly alleged a property interest in her role as executive assistant. Defendants' motion to dismiss her due process claim is denied.

The essential elements of Delosreyes's Fourteenth Amendment and procedural due process claim under the Fourteenth Amendment of the United States Constitution and Article 1, Section 11 of the Virginia Constitution are: (1) a property interest, (2) of which plaintiff was deprived by the defendant, (3) without due process of law. *See Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 826 (4th Cir. 1995).[2] "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). Such "[p]roperty interests ... are not created by the Constitution," but rather "they are created, and their

---

[2] "Because the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution, the same analysis will apply to both." *Shivaee v. Commonwealth*, 613 S.E.2d 570, 574 (2005).

dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. A property interest can be created by statute, administrative standard, contract, or implied promise. *Rosin v. Hill*, 2022 WL 3621478, at *3 (D. Md. Aug. 23, 2022) (citing *Bd. of Regents of State Colls*, 408 U.S. at 576–77).

In *Fields v. Durham*, the Fourth Circuit held that "the constitutionally protected property interest in employment does not extend to the right to possess and retain a particular job or to perform particular services." 909 F.2d 94, 98 (4th Cir. 1990) (citing *Huang v. Bd. of Governors*, 902 F.2d 1134 (4th Cir. 1990)). "Rather, the property interest is more generally in continued employment, and no deprivation exists so long as the employee receives 'payment of the full compensation due under the contract.'" *Id.* (quoting *Royster v. Bd. of Trustees,* 774 F.2d 618, 621 (4th Cir. 1985)). However, *Fields* did not involve a policy that guaranteed certain procedural protections before a demotion. Here, by contrast, BCPS's employment policies guarantee the right to request a hearing with the superintendent before a disciplinary action, like demotion or reassignment. Dkt. 45 ¶ 40.

Other district courts in the Fourth Circuit have found a property interest in a particular job where state law or employment policies require certain procedural protections before an employee is demoted. For example, in *Rosin*, the District of Maryland recognized a due process claim where a public-school principal was demoted without process, regardless of whether the demotion resulted in a loss of pay, because a Maryland statute provided that a county superintendent must be able to "articulate some basis for the reassignment [of a public employee] that is neither arbitrary, unreasonable, nor illegal" and that the "decision of a county superintendent may be appealed…". 2022 WL 3621478, at *3. The court reasoned, "[t]he fact that state law affords school personnel the

right to contest a demotion through an appeal process and to be free from an arbitrary or unreasonable demotion demonstrates the existence of a property interest." *Id.* I am persuaded by this authority and find that Delosreyes has plausibly alleged a property interest in her role as executive assistant sufficient to state a claim for violation of due process. *See Weathersbee v. Baltimore City Fire Dep't,* 970 F. Supp. 2d 418, 435–36 (D. Md. 2013) (finding a property interest where the "plaintiff was entitled under City personnel ordinances not to be demoted without just cause").

Separately, Defendants argue that Delosreyes's Virginia due process claim should be dismissed because Article I, Section 11 of the Virginia Constitution is not self-executing and does not provide a private right of action. However, Defendants' argument ignores recent Virginia precedent recognizing that Virginia's due process clause is self-executing. *See Ibanez v. Albemarle Cty. School Bd.*, 897 S.E. 2d 300, 311–12 (Va. Ct. App. 2024) (holding that "the first paragraph of § 11. . . [is] self-executing.").[3] Accordingly, Defendants' motion to dismiss Delosreyes's Virginia due process claim on this ground is denied.

## II.    Freedom of Speech Claims (Counts III and IV)

Delosreyes alleges that Defendants violated her right to free speech under the Federal and Virginia constitutions in two ways: a) by removing her as "Executive Assistant for her speech concerning the wages of a government employee and the operation of the government;" and b) by

---

[3] The first paragraph of Va. Const. Art. I, § 11 reads:

> That no person shall be deprived of his life, liberty, or property without due process of law; that the General Assembly shall not pass any law impairing the obligation of contracts; and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged, except that the mere separation of the sexes shall not be considered discrimination.

7

barring her from "communicat[ing] with anyone associated with BCPS except the Superintendent and human resources." Dkt. 45 at 84. I find that Delosreyes has plausibly stated both claims.

### a. Removal From Job as Executive Assistant

Defendants first move to dismiss Delosreyes's claim that Defendants violated her right to free speech by demoting her for discussing another employee's salary when, in reality, she was demoted for sharing confidential information. In support of their argument, Defendants' attach the disciplinary letter Superintendent Jonathan Russ sent Delosreyes in August 2022. The letter states:

> As discussed in our meeting on Thursday, August 11, 2022, you recently breached confidentiality by sharing a photo of a proposed pay scale for an employee in our office with coworkers. This happened before the proposed pay scale was approved by our school board.

Dkt. 21-1.[4] However, when deciding a motion to dismiss, the court must accept all allegations in the complaint as true and draw all inferences in favor of the non-moving party. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Here, Delosreyes alleges that regardless of what Russ's letter says, she was reassigned for discussing another employee's salary with a coworker. I deny Defendants' motion to dismiss as to this issue.

Defendants next move to dismiss Delosreyes's claims because her exchanges with coworkers were official speech, because it involved information that she was only privy to because of her employment. Dkt. 21 at 12. Therefore, they reason, Delosreyes's speech can be restricted. *Id.* However, this argument misstates the court's precedent on official speech. To determine whether speech by a public employee is official speech, a court must ask "whether the speech at issue is itself ordinarily within the scope of an employee's duties…". *Hunter v. Town of Mocksville*, 789 F.3d 389, 397 (4th Cir. 2015) (finding that police officers who reported their department to governor's office

---

[4] Delosreyes agrees that Russ's letter is integral to her Complaint and can be considered by the Court.

8

were not engaged in official speech).[5] Here, there are no allegations or facts suggesting that sharing another employee's proposed salary was within the scope of Delosreyes ordinary duties. Rather, Plaintiff alleges that she used the information she obtained through her role as an executive assistant to speak out about the misuse of school board funds. The Supreme Court has held that protecting this kind of speech is particularly important:

> speech by public employees on subject matter related to their employment holds special value precisely because those employees gain knowledge of matters of public concern through their employment… It would be antithetical to our jurisprudence to conclude that the very kind of speech necessary to prosecute corruption by public officials—speech by public employees regarding information learned through their employment—may never form the basis for a First Amendment retaliation claim.

*Lane v. Franks*, 573 U.S. 228, 240 – 41 (2014). Defendants' motion to dismiss is denied as to this issue.

    b. **Ban on Speaking to BCPS Employees**

Defendants move to dismiss Delosreyes's First Amendment claim to the extent it's based on the superintendent's instruction not to communicate with any BCPS employee because the restriction was limited to the investigation into her conduct, and thus, limited only to a matter of private concern. Additionally, Defendants argue that the restriction was implemented to maintain the integrity of the investigation into Delosreyes's conduct and thus served an important state interest. Dkt. 21 at 13. Delosreyes responds that the restriction applied to any contact with BCPS employees and necessarily encompassed issues of public concern. I agree that Delosreyes has alleged sufficient facts to state a First Amendment violation and deny Defendants' motion to dismiss as to this claim.[6]

---

[5] The protection given to free speech by the Constitution of Virginia is "coextensive with the free speech provisions of the Federal First Amendment." *See Vlaming v. West Point School Board*, 895 S.E. 2d. 705, 737 (Va. 2023) (quoting *Elliott v. Commonwealth*, 593 S.E.2d 263 (Va. 2004)) (applying First Amendment jurisprudence to Article 1, Section 12 of the Constitution of Virginia).

[6] To the extent Plaintiff's First Amendment claim rests on Russ's decision to ban Delosreyes from BCPS property, the claim is dismissed. The Fourth Circuit has held that a school board has "inherent

Prior restraints, like the one at issue here, are addressed under a modified *Pickering* standard that raises the government's burden. *U.S. v. Nat'l Treasury Emps. Union (NTEU)*, 513 U.S. 454, 465–68 (1995).[7] The Court first assesses whether the prior restraint restricted the employee from speaking as a citizen (not pursuant to her official duties) on matters of public concern. *Id.* at 466. If so, the government must demonstrate that "the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Id.* at 468 (quoting *Pickering*, 391 U.S. at 571).

Here, Defendants do not contest that the prior restraint would restrict Delosreyes from speaking as a citizen. Instead, they argue that the restriction is narrowly tailored to speech about the investigation into Delosreyes's conduct. However, at this stage, the Court must accept Delosreyes's allegation that she was banned from any contact with BCPS personnel. This broad restriction necessarily sweeps in speech on matters of public concern.

Defendants also argue that the school board had a compelling interest in the restriction—maintaining the integrity of the investigation into Desloreyes's conduct. Dkt. 21 at 12. But it's unclear how a ban on *all* contact with BCPS employees was necessary to protect the investigation or the operation of BCPS. *See Durstein v. Alexander*, 629 F. Supp. 3d 408, 433–34 (S.D.W. Va. 2022).

---

authority to restrict access to the property that it controls." *Cole v. Buchanan Cnty. Sch. Bd.*, 328 F. App'x 204, 209 (4th Cir. 2009). Accordingly, a ban on entering school board property cannot serve as the basis of a First Amendment claim.

[7] There is debate as to whether *NTEU* is applicable to prior restraints applied to a single employee. Some courts have held that the higher standard is limited to policies that affect a large number of employees. *Belcher v. City of McAlester, Okla.*, 324 F.3d 1203, 1206 n.3 (10th Cir. 2003). The Fourth Circuit has not weighed in directly on the issue but has affirmed a lower court's decision to apply *NTEU* to a restraint imposed on a single employee. *See Mansoor v. Trank*, 319 F.3d 133 (4th Cir. 2003).

Accordingly, the government has not met its burden under *NETU* and Defendants' motion to dismiss this claim is denied.

### III. Breach of Contract (Count V)

Defendants move to dismiss Delosreyes breach of contract claim on two grounds. First, Delosreyes's initial 2022–2023 employment contract did not entitle her to a particular job. Thus, the fact that Defendants forced her to sign a new contract that was identical except for the job title is not a breach. Second, even if it was a breach, Delosreyes did not suffer any actual damages because the School Board continued to pay her the same salary. I agree with both arguments and dismiss Delosreyes's breach of contract claim.

Delosreyes argues that she had a contract for an Executive Assistant position, and thus, forcing her to sign a new contract for an instructional assistant position breached the original contract. Dkt. 48 at 20. However, as Defendants point out, Delosreyes's contract incorporated the "Board Policy" which gave the board the right to "transfer an employee when it is determined to be in the best interest of the school division, . . . move an employee whose performance is unsuccessful to a position in which the employee might be successful, or to discipline an employee for conduct deficiencies." Dkt. 50-1. As a result, the Board did not breach the contract by moving Delosreyes. Moreover, even if the Board breached Delosreyes's contract, her claim still fails because she fails to plead economic damages.[8] *See Sanders v. UDR, Inc.*, 2010 WL 3927804, at *4 (E.D. Va. Oct. 4, 2010) (noting that a plaintiff must allege some damages recoverable in contract to survive a motion to dismiss). Delosreyes does not contest that the second 2022–2023 contract left her salary at

---

[8] Plaintiff's counsel argued at the motion to dismiss hearing that Delosreyes suffered economic damages, because her 2023–2024 employment contract includes a lower salary than her 2022–2023 contract. This argument is not supported by the record. Delosreyes's 2022–2023 contract was for a one-year term, and she had no contractual entitlement to any particular salary after the expiration of the contract. As a result, the decrease in Delosreyes salary in 2023–2024 is not economic damage.

11

$60,399, and as a result, she did not suffer economic damages. Her other alleged damages—emotional distress, harm to her reputation, punitives—are not available in a contract action. *See Smith v. McLaughlin*, 769 S.E.2d 7, 20 (Va. 2015) ("The 'rule,' then, is clear: 'tort damages'—including non-pecuniary damages such as mental anguish, emotional distress, and humiliation—'are not recoverable for breach of contract.'"). Accordingly, Delosreyes's breach of contract claim must be dismissed.

## IV. The School Board for Botetourt County Public Schools

Defendants move to dismiss the claims against The School Board for Botetourt County Public Schools because Delosreyes fails to allege that her transfer was "a policy or custom" and therefore cannot establish municipal liability under *Monell v. Dep't of Social Serv. of New York*, 436 U.S. 658 (1978). They argue that Plaintiff's allegation that the School Board approved her "reassignment" is insufficient. Dkt. 21 at 20. "The Complaint fails to state any specific conduct taken by the School Board, what motion was before the School Board for a vote, what the vote of the School Board was, or what information, if any was before the Board when it 'approved her reassignment.'" Dkt. 21 at 20-21. Delosreyes responds in two ways: 1) the superintendent is the final policymaking authority, and thus, his decision to demote Delosreyes represented the School Board's policy; and 2) the School Board is liable because it ratified the superintendent's decision to demote her. I find that Delosreyes has sufficiently alleged that the School Board delegated final policy making authority to the superintendent and thus, she has alleged sufficient facts at this stage that the School Board can be liable for Delosreyes's federal constitutional claims.

*Monell* permits suits against a municipality for a federal constitutional deprivation only when the municipality undertook the allegedly unconstitutional action pursuant to an "official policy" or

12

"custom."[9] 436 U.S. at 690–91. "[A] policy or custom for which a municipality may be held liable can [typically] arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'" *Id.* (citing *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

Here, Delosreyes argues that the School Board can be held liable for Superintendent Russ's conduct because he had final policymaking authority over the decision to fire Delosreyes.[10] The "question of who possesses final policymaking authority is one of state law." *Riddick v. School Bd. of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000). Delosreyes concedes that under Virginia law, the "school board …retain[s]…exclusive final authority over matters concerning employment and supervision of its personnel" but asserts that the School Board has delegated this authority to the Superintendent. *Riddick*, 238 F.3d at 523. *See* Dkt. 48 at 16–17. In support, Delosreyes argues that she was reassigned, forced to sign a new contact, and replaced all *before* the School Board approved the disciplinary action taken against her. Dkt. 48 at 18. In other words, the decision to discipline and demote Delosreyes was final before the board approved it, and thus, the Court can infer the School Board had given actual final authority to the Superintendent. I agree. At this stage, these allegations

---

[9] For the purpose of determining liability under *Monell*, local school boards in Virginia are treated as municipalities. *Starbuck v. Williamsburg James City Cty. Sch. Bd.*, 28 F.4th 529, 532 (4th Cir. 2022) (citing *Riddick v. Sch. Bd. of Portsmouth*, 238 F.3d 518, 522 n.3 (4th Cir. 2000)).

[10] In the alternative, Delosreyes asserts that the School Board is liable under *Monell*, because it ratified the decision of the Superintendent. But this argument is undermined by her allegations that the Superintendent's actions, not the School Board's approval, caused her injury. *Monell* liability is not available were a municipality merely affirmed an action after the injury has occurred. *See Brown v. City of Lynchburg*, 2024 WL 2724191, at *9 (W.D. Va. May 28, 2024).

13

are sufficient to plausibly assert a claim against the School Board on the grounds that it delegated its final authority over hiring and firing to the Superintendent. Plaintiff's Federal Constitutional claims will proceed against the School Board.

Notably, the School Board did not assert any state law-based immunity to Delosreyes's Virginia Constitutional claims. Accordingly, these claims will proceed as well.

V.   **Defendant Russ**

   a.   **Personal Capacity**

      i.   **Qualified Immunity**

Defendants move to dismiss Delosreyes's due process claims asserted against Defendant Russ in his individual capacity because the school board members and superintendent are entitled to qualified immunity.[11] Defendants make two arguments: 1) "[P]laintiff fails to allege [Defendants] affected her employment transfer in violation of any federal statutory or constitutional right; and 2) "[e]ven if [P]laintiff had adequately alleged unlawful conduct by individual defendants, it was not clearly established…that the employment transfer violated…[P]laintiff's rights." Dkt. 21 at 16–17. Because I agree that it is not clearly established that Delosreyes's transfer violated her right to due process, I find that Defendant Russ is entitled to qualified immunity on Delosreyes's federal due process claim.

Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

---

[11] Defendants assert qualified immunity as to all claims but make no argument as to Delosreyes's First Amendment claims. Regardless, there is no question that Delosreyes, a public employee, has a right to be free from retaliation for her speech, *see supra*. However, it is unclear, at this stage, whether Delosreyes's right to free speech was actually violated. Therefore, I deny Defendants' motion to dismiss the First Amendment claim asserted against Superintendent Russ in his personal capacity on qualified immunity to allow the parties to develop a more fulsome record. *See McVey v. Stacy*, 157 F.3d 271, 279 (4th Cir. 1998).

reasonable person would have known." *Smith v. Gilchrist*, 749 F.3d 302, 307 (4th Cir. 2014). "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Durham v. Jones*, 737 F.3d 291, 299 (4th Cir. 2013). "To prevail under qualified immunity, [defendants have] to show either that there was no constitutional violation or that the right violated was not clearly established." *Id.* (citations omitted). A right is clearly established where the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "In other words, 'existing precedent must have placed the statutory or constitutional question' confronted by the official 'beyond debate.'" *Garner v. Steger*, 69 F. Supp. 3d 581, 592 (W.D. Va. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Here, Defendants argue that Delosreyes transfer did not violate her due process right because she does not have a property interest in a specific job title. Instead, her interest is limited to continued employment. While I believe there is reason to find that Delosreyes did have a property interest in her role as executive assistant to the superintendent, *see supra*, there is legitimate debate as to whether the Fourth Circuit recognizes such a property interest. For example, in *Royster*, the court dismissed a due process claim based on a transfer because the plaintiff's "contract afforded him only the right to be fully compensated, and not the right to occupy [a specific office]." 774 F.2d at 621. Therefore, it is unclear whether transferring or demoting an employee implicates the due process clause.

Judge Conrad faced a virtually identical situation in *Garner v. Steger*. In that case, the plaintiff alleged that his right to due process was violated when he was transferred to a new position. Like here, his transfer was a demotion, but his pay was not reduced. Judge Conrad concluded that, although he believed there was a property right in the plaintiff's specific office, "it is easy to

15

understand that [the defendant's counsel] would have believed the change in position" would not implicate the due process clause based on the Fourth Circuit's rulings in *Royster* and *Huang*. Likewise, here, I find that Delosreyes's transfer did violate the due process clause but that the violation was not clearly established, and thus, Defendant Russ is entitled to qualified immunity for Delosreyes's federal due process claims. Notably, Defendants do not seek dismissal of Delosreyes's state law claims based on any form of sovereign or qualified immunity. Accordingly, Delosreyes's state due process and free speech claims will proceed as to Defendant Russ.

### b. Official Capacity

Defendants seek to dismiss all official capacity claims against Dr. Russ, because they are duplicative of the claims against the school board itself. I agree. As the Supreme Court held in *Kentucky v. Graham,* "a judgment against a public servant in his official capacity imposes liability on the entity that he represents." 473 U.S. 159, 169 (1985) (internal quotation omitted). Thus, suing a government official in his or her official capacity is "only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. *See also Hinchey v. Ogden*, 307 S.E.2d 891, 893 (1983) ("[The government employee], sued in his official status, enjoys whatever immunity the sovereign may be entitled to claim."). Accordingly, the official capacity claims against Defendant Russ are dismissed.

## VI. School Board Member Defendants

### a. Personal Capacity

Defendants also seek to dismiss all personal capacity claims against the individual school board for two additional reasons: 1) Plaintiff fails to allege any specific actions by individual school board members that injured Delosreyes and 2) the school board members are entitled to qualified

immunity.[12] Because I find that Plaintiff fails to make specific allegations against the individual board members, it is not necessary to determine whether the board members are entitled to qualified immunity.

Individual local officials, like school board members, may be held liable for conduct that results in the deprivation of state and federal rights. However, this requires "specific allegations regarding the individual conduct" of the official. *See Smith-Hosch v. Bramble*, 2019 WL 4060017, at *4 (D. Md. Aug. 28, 2019). Here, there are no allegations regarding the school board member Defendants' individual conduct. In fact, the board members are mentioned only in the opening paragraphs of the Amended Complaint, which merely identifies them as parties. Dkt. 45 ¶¶ 6–12. Instead, Delosreyes alleges that the Board, as a whole, approved her reassignment, *id.* ¶ 41, and Defendants, generally, breached her employment contract and ignored her grievance, *id.* ¶¶ 32–33, 36. Though these non-specific allegations are sufficient to support a claim against the Board, they are insufficient to state a claim against any individual board member. *See Pettis v. Nottoway Cnty. Sch. Bd.*, 2013 WL 3063704, at *7 (E.D. Va. June 17, 2013)

### b. Official Capacity

Defendants seek to dismiss all official capacity claims against the individual school board members because they are duplicative of the claims against the school board itself. For the same reason, I found that the official capacity claims against Defendant Russ were redundant, I find that the official capacity claims against individual school board members are essentially claims against the school board. Accordingly, the official capacity claims against the school board member Defendants are dismissed.

---

[12] Defendants do not address whether the school board member Defendants are entitled to some type of state-law immunity.

## VII. Botetourt County Public Schools

Finally, Defendants seek to dismiss all claims against Botetourt County Public Schools because it has no legal existence separate from The School Board for Botetourt County Public Schools. Dkt. 21 at 18. Plaintiff agrees. Accordingly, all claims against Botetourt County Public Schools are dismissed.

## VIII. Conclusion

Defendants' motion to dismiss is **GRANTED** as to Plaintiff's breach of contract claim. Defendants' motion to dismiss is also **GRANTED** as to the claims asserted against Botetourt County Public Schools, the individual school board member Defendants and Superintendent Russ in their official capacities, and the individual school board member Defendants in their personal capacities. Finally, Defendants' motion to dismiss is **GRANTED** as to the federal due process claim against Superintendent Russ in his personal capacity.

Defendants' motion to dismiss is otherwise **DENIED.** Plaintiff's First Amendment and Virginia free speech claims will proceed against Superintendent Russ in his individual capacity, and the School Board. Plaintiff's state due process claim will proceed against Superintendent Russ in his individual capacity and the School Board. Plaintiff's federal due process claim will also proceed against the School Board.

Entered: August 7, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge