**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

February 13, 2026

LAURA A. AUSTIN, CLERK
BY: /s/ Erica Jones
DEPUTY CLERK

| | | |
|---|---|---|
| **LUANN DELOSREYES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 7:24-cv-00525** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **THE SCHOOL BOARD FOR** | ) | **By: Hon. Robert S. Ballou** |
| **BOTETOURT COUNTY** | ) | **United States District Judge** |
| **PUBLIC SCHOOLS et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendants' Motion for Summary Judgment. Dkt. 87. Plaintiff LuAnn Delosreyes brought this civil rights action under 42 U.S.C. § 1983 and the Virginia Constitution against the School Board for Botetourt County Public Schools and Dr. Jonathan Russ, who served as Superintendent of Botetourt County Public Schools during the relevant time period. Delosreyes alleges violations of her rights to due process and free speech under the Fourteenth and First Amendments to the United States Constitution and under Article I, §§ 11 and 12 of the Virginia Constitution.

I previously dismissed Delosreyes's breach of contract claim; her claims against Botetourt County Public Schools, the individual school board members and Russ in their official capacities, and the individual school board members in their personal capacities; and the federal due process claim against Russ in his personal capacity. *See* Dkts. 64–65. Defendants now move for summary judgment on the remaining claims.

For the reasons below, the motion is **GRANTED**, and all claims are **DISMISSED** with

prejudice.

## I.    Background

The facts below are recited in the light most favorable to Delosreyes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

From July 1, 2019, through August 23, 2022, LuAnn Delosreyes worked for Botetourt County Public Schools as Executive Assistant to the Superintendent and School Board Clerk. Dkt. 93 at 1–2. Delosreyes reported to Superintendent Dr. Jonathan Russ. During the events at issue, Tim McClung served as Director of Human Resources and Health Services, and Anna Weddle served as School Board Chair. *See id.* at 1 & n.1.

Delosreyes's employment contract for the 2022-23 school year specified her position as Executive Assistant to the Superintendent and listed her contract status, grade, step, and salary. The contract stated that Delosreyes "shall work such hours, perform such duties, and receive such benefits as covered in Board Policy which shall be considered part of this contract." Dkt. 88-9 at 1. It further provided: "The School Board, upon recommendation of the division superintendent, reserves the right to dismiss Employee, for just cause, paying for services rendered in accordance with the Agreement to date of dismissal. Employee shall have the right to ask for a hearing before the School Board in such cases." *Id.*

Additionally, the School Board maintained a grievance policy adopted pursuant to Va. Code § 22.1-79(6), which provided procedures for employees to contest dismissal or other disciplinary actions. However, the policy contained an explicit disclaimer that "[n]othing in this procedure is intended to create, nor shall it be construed as creating, a property right in employment, nor shall this procedure be interpreted to limit in any way whatsoever the School Board's exclusive final authority over the employment and supervision of its personnel." Dkt.

88-13 at 1.

Throughout her employment, Delosreyes regularly texted from her personal phone with coworkers, including Emily Shafer (Administrative Assistant for Special Education), Cathy Quinn (Administrative Assistant in Human Resources and Deputy Board Clerk), and Beth Allen (Director of IT). These text messages reveal an extensive pattern of personal communications including gossip about coworkers, personal complaints, and discussions of office matters. *See generally* Dkt. 88-4.

In the months leading up to July 2022, Delosreyes had concerns about her coworker Leigh Phillips, who worked as School Board Administrative Assistant for Accounts Payable. Delosreyes told Russ that Phillips was not a team player and that she was always on social media when Delosreyes would go to her. *See* Dkt. 88-1 at 24:16–22. Despite these shortcomings, Phillips was scheduled to receive a title change with a pay increase when the new school year began in 2022. On July 14, 2022, Delosreyes texted Shafer:

> **Delosreyes:** "Unreal. She will come off the phones now."
> **Shafer:** "Umm why"
> **Delosreyes:** "I'm sure that will be the next thing. Because she is a specialist. Bullshit! I'm so fucking pissed. I need to figure out a way to fix my attitude before this meeting"[1]

Dkt. 88-4 at 21–22. Delosreyes then texted Shafer a photo of a salary scale showing a proposed pay scale for the position of School Board Admin Assistant: Accounts Payable and a proposed title change to School Board Specialist: Accounts Payable. *Id.* Delosreyes concedes the salary scale "was not a matter to be shared with Emily Shafer before it became public." Dkt. 88-1 at 22:4–8. She also admits her language was not professional and clarified that this was "in a personal text message with Emily." *Id.* at 27:20–23.

---

[1] There were five administrative assistants who covered phone duties in rotation. Phillips's raise would remove her from phone rotation, meaning the other assistants—including Delosreyes—would have to cover more phone duty. *See* Dkt. 88-1 at 26:7–27:14.

On August 10, 2022, the first day of the school year, Delosreyes sent a text message to Allen asking: "Is the first day of school like it is every year a total shit show?" *Id.* at 124:16–18. Delosreyes admits this was not professional and stated she was talking with Allen "as a friend." *Id.* at 124:23–125:15.

On August 11, 2022, Russ, McClung, and Weddle met with Delosreyes. The parties give somewhat different accounts of this meeting, but it is undisputed that the parties discussed Delosreyes's disclosure of confidential information, her text message to Allen, and gossiping and trust issues. *See id.* at 108:15–109:24; Dkt. 88-5 at 35:17–20. According to Delosreyes, Russ also discussed text messages she had sent about his wife and daughter. Dkt. 88-1 at 110:12–13; 120:5–8. Delosreyes further testified that Russ yelled at her and told her to "shut up" at one point. *Id.* at 108:20–22; 129:17–18. Delosreyes was then given a written letter stating she was placed on administrative leave for "breach of confidentiality in the workplace and unprofessionalism," and she was informed that an investigation would occur. Dkt. 88-6.

The parties also dispute the scope of restrictions placed on Delosreyes's communications during her leave, but Delosreyes claims Russ told her: "During this investigation, you are not to talk to anyone in Botetourt County Public Schools, school board office included. You are not to be on any Botetourt County school property." Dkt. 88-1 at 110:4–8. However, Delosreyes was told she could contact McClung if she had problems or questions, and she did in fact contact McClung. *Id.* at 129:7–13.

On August 14, 2022, Delosreyes sent a detailed email to McClung, asking him to share it with Russ and the Board. Delosreyes apologized in the email for her actions, detailed concerns about unhappiness among employees and her efforts to address it, and explained her reason behind sharing confidential information about another employee's pay increase. *See* Dkt. 88-7.

While McClung, Russ, and Weddle testified to reading the email, it is not clear whether the Board members considered the email when deciding the disciplinary action against Delosreyes. *See, e.g.*, Dkt. 88-5 at 50:2–17; Dkt. 88-2 at 130:20–131:1, 132:16–133:9, 135:10–136:7; Dkt. 93-2 at 106:4–21.

On August 23, 2022, Delosreyes, Russ, and McClung had a follow-up meeting where Delosreyes was presented with an Official Letter of Reprimand and Reassignment. The letter explained that Delosreyes "breached confidentiality by sharing a photo of a proposed pay scale for an employee in our office with coworkers" and acted unprofessionally by announcing to other coworkers that "the first day of the school year was 'a total shit show.'" Dkt. 88-8. It stated that based on these two incidents, Russ did not believe Delosreyes could fulfill her duties as Administrative Assistant to the Superintendent. *Id.*

Effective August 24, 2022, Delosreyes was reassigned to an Instructional Assistant position. The letter specified that for the rest of the contract, Delosreyes's "compensation and benefits will be reflective of your current contract," but if her contract was renewed next year, it would be renewed on the contract for instructional assistants, which provides for lower pay and benefits compared to the Executive Assistant Position. Dkt. 88-8. Delosreyes testified that she was given the letter to read and that she did not say anything at the August 23 meeting. Dkt. 88-1 at 148:17–149:4. No one told her to shut up at this meeting, but she chose not to speak because she understood the decision as final, having already provided her explanation in her August 14 email to McClung. *Id.*

On August 25, 2022, Delosreyes emailed her Request for Grievance Hearing to Russ. Dkt. 88-7. Russ testified that he did not recall when he first saw Delosreyes's request. Dkt. 88-5 at 59:10. On August 30, 2022, Delosreyes signed a new contract for the Instructional Assistant

position for the 2022-23 school year. Dkt. 93-6 at 2–3. The contract maintained her same salary

and work hours for the remainder of that school year. On September 1, 2022, Susan Albert began

working as the new Administrative Assistant/Board Clerk, replacing Delosreyes in her former

position. *See* Dkt. 93-13.

On September 8, 2022, the School Board held a meeting with a closed session for

personnel matters. The Board had before it a personnel packet listing personnel actions,

including reassignment of "DELOSREYES, LuAnn from Executive Assistant to the

Superintendent at the SBO to Instructional Assistant at Buchanan." *Id.* According to McClung's

testimony, there was "little to no discussion about her reassignment." Dkt. 88-2 at 100:14–16.

The Board was asked if they had any questions about the personnel packet generally; there were

no questions. *Id.* at 103:11–20. The Board then voted to approve the administration's

recommendations for appointment of personnel. *See* Dkt. 88-10; Dkt. 88-12.

From August 24, 2022, through the present, Delosreyes has remained employed by

Botetourt County Public Schools as an Instructional Assistant. *See* Dkt. 93 at 2; Dkt. 93-6. For

the 2022-23 school year, her salary and work hours remained the same as when she was

Executive Assistant. For subsequent school years, her contracts reflect the Instructional Assistant

pay scale and benefits.

## II.    Standard of Review

Federal Rule of Civil Procedure 56 requires that the court "grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Once the movant properly makes and supports a motion

for summary judgment, the opposing party must show that a genuine dispute exists. *Matsushita

Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). In determining whether a genuine dispute of material fact exists, the

court views the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at

255. However, the nonmoving party cannot defeat a properly supported motion for summary

judgment with mere conjecture and speculation. *See Glover v. Oppleman*, 178 F. Supp. 2d 622,

631 (W.D. Va. 2001). On the contrary, the court has an "affirmative obligation" to "prevent

'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-*

*Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex Corp.*, 477 U.S. at 317).

## III.    Analysis

### A.  Due Process Claims

Delosreyes alleges that Defendants deprived her of a property interest without due

process in violation of the Fourteenth Amendment and Article I, § 11 of the Virginia

Constitution. Specifically, Delosreyes challenges her August 23, 2022, reassignment or demotion

from Executive Assistant to Instructional Assistant. *See* Dkt. 45 ¶ 51. Her claimed damages flow

from this reassignment, including lost wages for subsequent years due to the lower pay scale of

the Instructional Assistant position compared to what she would have earned had she been

rehired as Executive Assistant.

Because the due process protections afforded under the Virginia Constitution are co-

extensive with those of the federal constitution, the same analysis applies to Delosreyes's due

process claims alleged in Counts I and II. *See Reid v. James Madison Univ.*, 90 F.4th 311, 317

n.6 (4th Cir. 2024). To establish a procedural due process claim, a plaintiff must demonstrate: (1)

a protected liberty or property interest, and (2) deprivation of that interest without due process of

law. *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).

### 1.  Property Interest

Property interests are not created by the Constitution but rather by independent sources

7

such as state law. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). "The

hallmark of property . . . is an individual entitlement grounded in state law, which cannot be

removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)

(citations omitted). As the Fourth Circuit explained in *Stone v. University of Maryland Medical

System Corporation*, a public employee has a constitutionally protected property interest in his

continued employment where he could be discharged from his position "only for cause." 855

F.2d 167, 172 (4th Cir. 1988) (citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–

39 (1985)).

   Here, Delosreyes contends that Defendants violated her due process rights by reassigning

or demoting her from the position of Executive Assistant to the Superintendent to Instructional

Assistant. In the public-employment context, the Fourth Circuit has consistently distinguished

between a protected interest in continued employment and an asserted interest in a particular job

assignment, title, or duties. [2] Only the former is ordinarily protected. *See Fields v. Durham*, 909

F.2d 94, 98 (4th Cir. 1990) ("[T]he constitutionally protected property interest in employment

does not extend to the right to possess and retain a particular job or to perform particular

services. Rather, the property interest is more generally in continued employment." (citation

modified)); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1142 (4th Cir. 1990);

*Royster v. Bd. of Trs. of Anderson Cnty. Sch. Dist. No. Five*, 774 F.2d 618, 621 (4th Cir. 1985).

---

[2] This Opinion does not address whether Delosreyes had a property interest in continued employment with Botetourt County Public Schools. Delosreyes's claims are specific to her position, and in any case, she was not terminated and remains a Botetourt County Public Schools employee. Likewise, Delosreyes does not appear to argue that she was entitled to renewal of her employment contract for the Executive Assistant to the Superintendent position. Assuming she does, this claim lacks merit because none of her contracts guaranteed renewal for the same job title, duties, or pay. *See Roth*, 408 U.S. at 578 (finding no claim of entitlement to reemployment where contract terms did not provide for contract renewal); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).

While *Rosin v. Hill* recognized the possibility of a due process property interest in maintaining a particular position, the court in *Rosin* relied on Maryland law that had been interpreted to allow school employees to appeal transfers and demotions, as well as a collective bargaining agreement that specifically protected school administrators from involuntary demotions without notice. No. CV TDC-21-0983, 2024 WL 4150686, at *5 (D. Md. Sept. 10, 2024), *aff'd*, No. 24-2025, 2025 WL 2505944 (4th Cir. Sept. 2, 2025), *cert. denied*, No. 25-669, 2026 WL 79742 (U.S. Jan. 12, 2026). No similar provision appears here in Virginia law, Delosreyes's employment contract, or the grievance policy. The grievance policy covers "proposed dismissal[s] or other disciplinary action[s]," but it does not state that reassignment constitutes a disciplinary action and only defines dismissal as termination of employment. Dkt. 88-13.

Although Delosreyes's contract for the 2022–23 school year listed her position as Executive Assistant to the Superintendent, it did not guarantee that she would remain in that role for the duration of the contract.[3] All employment contracts specify position details, and if such specificity created property interests in particular positions, *Fields*'s holding would be meaningless. Furthermore, the contract did not restrict the school system's authority to assign duties or reassign personnel. Even if Delosreyes was demoted in title or position, she continued to receive the same salary and work hours for the remainder of her contract term. Such reassignment—without loss of pay or employment guaranteed by her original contract—does not implicate a constitutionally protected property interest. *See Royster*, 774 F.2d at 620–21 (finding that plaintiff's employment contract "afforded him only the right to be fully compensated, and

---

[3] I previously dismissed Delosreyes's breach of contract claim, finding that her initial 2022–2023 employment contract did not entitle her to a particular job and that, even if there was a breach, Delosreyes did not suffer actual damages because she continued to be paid the same salary. *See* Dkt. 64 at 11–12.

not the right to occupy the office of superintendent"); *Bostic v. Russell Cnty. Sch. Bd.*, No. 91-1644, 1992 WL 172663, at *2 (4th Cir. July 24, 1992). Additionally, even though Delosreyes's 2022–23 employment contract did not provide for renewal, after that contract expired, Botetourt County Public Schools offered and Delosreyes accepted new contracts for subsequent years to work as an Instructional Assistant.

Because Delosreyes has no protected property interest in her specific position as Executive Assistant to the Superintendent, her due process claims fail as a matter of law.

### 2. *Loudermill* Requirements

Even assuming Delosreyes had a property interest in her position as Executive Assistant to the Superintendent, she received constitutionally adequate process. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).

The Supreme Court in *Loudermill* announced that the due process required before depriving an employee of a property interest includes: (1) notice of the charges; (2) explanation of the employer's evidence; and (3) opportunity to respond. *Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1463 (4th Cir. 1990). Importantly, "[d]ue process does not mandate that all evidence on a charge or even the documentary evidence be provided, only that such descriptive explanation be afforded as to permit [the employee] to identify the conduct giving rise to the dismissal and thereby to enable him to make a response." *Linton v. Frederick Cnty. Bd. of Cnty. Comm'rs*, 964 F.2d 1436, 1440 (4th Cir. 1992) (citation omitted). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 546. Moreover, *Loudermill* held that a written response satisfies due process—an oral hearing is not required. *Id.* at 546. For demotions or reassignments, even less process may be required. *See Rosin*, 2024 WL 4150686, at

10

*5 ("Rosin has not identified any controlling authority or consensus of persuasive authority

establishing that . . . when a school employee is being reassigned or demoted to a lower position

but with the same pay for a temporary period of time, any procedural protections beyond notice

of the reason for the action and a meeting with the superintendent are constitutionally required."

(citation modified)).

Here, Delosreyes received both oral and written notice of the charges against her. At the

August 11, 2022, meeting, Delosreyes testified she was told that she went behind Russ's back to

the School Board, exchanged unprofessional text messages with Allen, and gossiped in the

office, causing Russ's trust in her to be "broken." Dkt. 88-1 at 108:15–109:24. Delosreyes also

received a letter indicating that she was placed on leave for "breach of confidentiality in the

workplace and unprofessionalism." Dkt. 88-6. On August 23, 2022, Delosreyes received a Letter

of Reprimand and Reassignment, providing additional detail. That letter stated:

> [Y]ou recently breached confidentiality by sharing a photo of a proposed pay scale
> for an employee with coworkers. This happened before the proposed pay scale was
> approved by our school board. Additionally, we discussed an incident of
> unprofessionalism when you announced to other co-workers during lunch on
> Wednesday August 10, 2022, that the day central office administrators were visiting
> schools for the first day of the school year was "a total shit show."

Dkt. 88-8.

Delosreyes also received an explanation of the evidence. She was told Russ had seen the

text messages at issue, and she knew the content of those messages because she had sent them.

Delosreyes was informed of specific incidents at issue—namely, the photo of the pay scale

shared with coworkers and the August 10 text to Allen. While Delosreyes argues she was not

told which policies she violated, *Loudermill* does not require citation to specific policy numbers

or sections. The employer need only "identify the conduct giving rise to the dismissal." *Linton*,

964 F.2d at 1440.  Delosreyes clearly could identify the conduct as proven by her August 14

email.

Finally, Delosreyes responded on multiple occasions to the allegations of her misconduct. First, she sent a detailed email to McClung on August 14, 2022, requesting that it be shared with Russ and the Board. In the email, she apologized for her actions; explained her perspective on office issues; addressed the sharing of Phillips's pay information; admitted, "I knew better" and "I knew it was wrong"; and stated, "I understand there will be changes made if I am allowed to keep my job." Dkt. 88-7. This email demonstrates Delosreyes understood the charges and could respond to them. Delosreyes argues it is unclear if her email was considered before the reassignment decision was made. However, McClung shared the email with Russ as requested, and McClung's testimony suggests that Russ then forwarded the letter to the Board. Dkt. 88-2 at 135:12–136:4; *see also* Dkt. 93-2 at 106:4–21. This occurred before Delosreyes was reassigned on August 24 and before the School Board approved the reassignment on September 8. *Loudermill* requires that the employee have an opportunity to submit a response; it does not require that the employer find the response persuasive or change course based on it.

Secondly, Delosreyes had two in-person meetings with the administration regarding her conduct at which she could have spoken. At the August 23, 2022, meeting with Russ and McClung, Delosreyes admits that she chose not to say anything even though she could have. *See* Dkt. 88-1 at 148:21–149:1. The fact that she perceived the decision as final does not mean she lacked the opportunity to respond—she simply chose not to exercise that opportunity. Thus, whether Russ reviewed her email before August 24 and whether the Board itself reviewed her email are immaterial. Delosreyes had multiple opportunities to be heard, and Russ received her written response before making the reassignment decision.

Delosreyes received no less than the minimum process required for termination—let

12

alone reassignment with the same pay—and, therefore, her due process claims fail.

## B. First Amendment Claims

Because "Article I, § 12 of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment," *Elliott v. Commonwealth*, 593 S.E.2d 263, 269 (Va. 2004), the same analysis applies to Delosreyes's free speech claims alleged in Counts III and IV.

### 1. Retaliation

Delosreyes alleges that Defendants retaliated against her for engaging in protected speech in violation of the First Amendment and Article I, § 12 of the Virginia Constitution.

To state a First Amendment retaliation claim, a public employee must show: (1) the employee spoke as a citizen on a matter of public concern; (2) the employee's interest in speaking outweighed the government's interest in managing the work environment; and (3) the speech was a substantial factor in the adverse employment action. *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (citations omitted). If the plaintiff's speech "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary . . . to scrutinize the reasons for [the] discharge." *Connick v. Myers*, 461 U.S. 138, 146 (1983).

An employee speaks on a matter of public concern when addressing "an issue of social, political, or other interest to a community." *Urofsky v. Gilmore*, 216 F.3d 401, 406–07 (4th Cir. 2000) (citing *Connick*, 461 U.S. at 146). The inquiry examines "the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. The test is "whether the public or the community is likely to be truly concerned with or interested in the particular expression, or whether it is more properly viewed as essentially a private matter between employer and employee." *Berger v. Battaglia*, 779 F.2d 992, 999 (4th Cir. 1985) (internal quotation marks omitted). "Personal grievances, complaints about conditions of

13

employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment." *Stroman v. Colleton Cnty. Sch. Dist.*, 981 F.2d 152, 156 (4th Cir. 1992) (citing *Connick*, 461 U.S. at 147); *see also Supinger v. Virginia*, 259 F. Supp. 3d 419, 444 (W.D. Va. 2017) (finding that plaintiff's speech concerning his coworker's behavior related only to his own workplace environment and did not concern the general public).

Here, none of Delosreyes's text messages address a matter of public concern. Her July 14, 2022, texts to Emily Shafer discussing Phillips's promotion constitute personal complaints about workplace conditions. Delosreyes testified she was "fucking pissed" because Phillips's title change would take her off phone rotation, "so that meant everybody else was gonna have to pull more phone duty." Dkt. 88-1 at 60:9–13. This is a paradigmatic personal grievance about employment conditions—increased workload for Delosreyes resulting from a coworker's personnel change. Delosreyes argues in her Amended Complaint that she expressed an "opinion that the pay raise was not deserved and, therefore was a waste of public funds," Dkt. 45 ¶ 22, but the actual text does not support this. Delosreyes cannot rely on her retroactive characterization of her personal complaint as commentary on public finances. Additionally, the text was sent from Delosreyes's personal cell phone and included profanity that she admits she would "never use in professional context" and uses only when "speaking to [her] friends." Dkt. 88-1 at 27:20–23, 50:3–10. She characterized it as "a personal text message with Emily." *Id.* at 27:22–23. While private communications can sometimes address matters of public concern, *see Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 414–15 (1979), the form is relevant to determining the nature of the speech. Here, the informal, profanity-laden personal text to a friend indicates personal venting, not public commentary. Lastly, the text was part of an ongoing pattern of personal

14

communications between Delosreyes and Shafer about office gossip, personal matters, and complaints about coworkers. The record shows Delosreyes regularly shared confidential information about other employees, complained about coworkers with profanity, and engaged in office gossip and eavesdropping. *See* Dkt. 88-4; Dkt. 88-1 at 132:12–22. This context confirms the July 14 text was part of personal workplace griping, not public commentary.

The court's reasoning in *Weihua Huang v. Rector & Visitors of the University of Virginia*, 896 F. Supp. 2d 524 (W.D. Va. 2012), is instructive. In *Weihua Huang*, a university researcher complained about "level-of-effort misallocation" on a grant, characterizing it as "public corruption." The court held this was not speech on a matter of public concern:

> While the issue of level-of-effort allocation understandably represented a matter of significance to Dr. Huang, it simply cannot be said that the larger public would be truly concerned about Dr. Li increasing his level of effort by 2.5% or about the fact that Ms. Gautier . . . was receiving more of her salary from the ANKK1 grant funds than perhaps she should have been. While the community might very well care about systemic fraud or the widespread misappropriation of federal funds across a university department, here, Dr. Huang's speech concerned allegations of level-of-effort misallocation over the course of a couple months in the management of a single NIH grant. Ultimately, day-to-day matters of one grant's administration do not represent issues of public concern.

*Id.* at 547. The court concluded: "[E]ven assuming that Dr. Huang spoke as a citizen, I find that he did not do so on a matter of public concern. Consequently, even if Defendants retaliated against him in part for having spoken about the misallocation of levels of effort, they did not violate Dr. Huang's constitutional rights." *Id.*

The same analysis applies here. While Delosreyes now characterizes Phillips's raise as a "waste of public funds," her actual concern is much narrower: one employee in the school board office getting a raise and title change despite not being a team player and spending time on social media. This is a day-to-day personnel matter, not systemic fraud or widespread misappropriation. Individual personnel decisions about low-level administrative positions are internal management

15

matters. The fact that the position is funded with public money does not transform every employment decision into a matter of public concern. *See Brooks*, 685 F.3d at 372 ("The mere fact that 'the public may always be interested in how government officers are performing their duties . . . will not always suffice to show a matter of public concern.'" (quoting *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 399 (2011))); *Harris v. Quinn*, 573 U.S. 616, 653 n.28 (2014) (noting that "a single public employee's pay is usually not a matter of public concern").

Delosreyes suggests that because she served as an office manager who received employee complaints, her speech has a public dimension. However, an employee's job duties do not transform personal grievances into protected speech. In fact, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Delosreyes also argues that the public has a legitimate interest in public employee salaries because they are FOIA-requestable. However, the fact that information is accessible to the public does not make every bit of gossip about that information a matter of public concern. The question is whether the particular expression addresses an issue of interest to the public. Finally, Delosreyes cites her complaints to Russ and Board members about Phillips as evidence that the text messages pertained to a matter of public concern. But Delosreyes's later communications with Board members are not the basis for the adverse action, and in any case, her testimony suggests she went to Board members to complain about office unhappiness and personnel issues, which still constitute personal grievances.

Similarly, Delosreyes's August 10 text message to Beth Allen was also not speech of public concern. The text asked: "Is the first day of school like it is every year a total shit show?"

16

Dkt. 88-1 at 124:16–18. This communication is pure insult with no factual content about

government operations. It does not identify any specific problem, provide any information, or

raise any concern. Additionally, the text is a personal message; Delosreyes admits she was

"talking with Beth as a friend" and this was "not professional." *Id.* at 125:1–15. Vague

complaints and insults about the workplace do not constitute speech on matters of public

concern. "[P]ublic concern is something that is a subject of legitimate news interest; that is, a

subject of general interest and of value and concern to the public." *City of San Diego v. Roe*, 543

U.S. 77, 83–84 (2004).

Because Delosreyes's speech does not address matters of public concern, her First

Amendment retaliation claims fail as a matter of law.

### 2.  Prior Restraint

Delosreyes alleges that Defendants violated the First Amendment by restricting her from

communicating with anyone in the Botetourt County School System during her administrative

leave, constituting an unconstitutional prior restraint on speech.

For purposes of summary judgment, I view the facts in the light most favorable to

Delosreyes and therefore accept her version of the restriction. Delosreyes testified that Russ

stated: "During this investigation, you are not to talk to anyone in Botetourt County Public

Schools, school board office included. You are not to be on any Botetourt County school

property." Dkt. 88-1 at 110:4–8. She testified she was also told she could contact McClung if she

had problems or questions, and she did contact McClung. *Id.* at 129:7–13.

Prior restraints on speech are "the most serious and the least tolerable infringement on

First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). However,

public employers may impose restraints on the job-related speech of public employees that

would be plainly unconstitutional if applied to the public at large. *United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 465 (1995). The threshold question is whether the restriction regulates speech on matters of public concern? *Liverman v. City of Petersburg*, 844 F.3d 400, 407 (4th Cir. 2016). If it does, "[t]he Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *Nat'l Treasury Emps. Union*, 513 U.S. at 468 (quoting *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205*, 391 U.S. 563, 571 (1968)).

Under Delosreyes's version of facts, she was prevented from speaking on any matter to Botetourt County Public School employees during her investigation.[4] However, the restriction was limited in duration and provided an exception for HR. Delosreyes did in fact contact HR in her August 14 email, and this email was shared with Russ. Delosreyes also "remained free to take any matters of public concern . . . to the media, state or city officials, or any other outside outlet." *Roberts v. Springfield Util. Bd.*, No. 6:19-CV-01595-MC, 2021 WL 5748883, at *6 (D. Or. Dec. 2, 2021), *aff'd*, No. 21-36052, 2023 WL 3433431 (9th Cir. May 12, 2023), *and aff'd*, 68 F.4th 470 (9th Cir. 2023). Furthermore, the restriction was issued in the context of an ongoing workplace investigation and served Botetourt County Public Schools' legitimate interests in maintaining investigation integrity, avoiding workplace disruption, and protecting confidentiality. Such temporary restrictions on employee communications during workplace investigations are a standard and reasonable practice. *McDaniel v. Quick* is instructive. No. 4:07-

---

[4] "[A] public employee's expression of grievances concerning his own employment is not a matter of public concern." *Huang*, 902 F.2d at 1140 (citations omitted). Delosreyes does not identify specific matters of public concern she was prevented from speaking about, but for the purposes of this analysis, I assume the restriction covered such matters.

CV-990-TLW-TER, 2010 WL 2889026 (D.S.C. June 1, 2010), *report and recommendation adopted*, No. CIV.A4:07-990-TLW-TE, 2010 WL 2889024 (D.S.C. July 22, 2010). In *McDaniel*, the plaintiff employee was directed "not to have any contact with any district or school employees" while the superintendent conducted his investigation, and the court found that this restriction did not violate the employee's free speech rights. *Id.* at *6; *see also Roberts*, 2021 WL 5748883, at *6 (finding that restriction prohibiting plaintiff "from engaging in communication in any form with any employees . . . other than [the supervisor]" was "sufficiently narrowly tailored to constitute a permissible prior restraint"). The restriction imposed on Delosreyes was nearly identical in nature to that in *McDaniel* and *Roberts* and similarly did not violate the First Amendment.

Moreover, even if the restriction violated the First Amendment, Russ is entitled to qualified immunity. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "Clearly established" means the right must be sufficiently clear that "every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation modified). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations omitted). "[I]n gray areas, where the law is unsettled or murky, qualified immunity affords protection to an officer who takes an action that is not clearly forbidden—even if the action is later deemed wrongful." *Rogers v. Pendleton*, 249 F.3d 279, 286 (4th Cir. 2001) (citation omitted).

Here, it was not clearly established that the restriction placed on Delosreyes violates the

19

Constitution. Delosreyes has not identified—and the Court's research has not revealed—any Supreme Court or Fourth Circuit case holding that temporarily restricting an employee under investigation from communicating with coworkers violates the First Amendment. The lack of controlling authority establishing this right means the law was not "beyond debate," and qualified immunity applies.

For these reasons, Delosreyes's prior restraint claims fail.

### C.  *Monell* Liability

Delosreyes's claims against the School Board are brought under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

*Monell* permits suits against municipalities for constitutional deprivations only when the municipality undertook the allegedly unconstitutional action pursuant to an official policy or custom. *Id.* at 690–91. A policy or custom can arise in four ways: (1) an express policy, such as a written ordinance or regulation; (2) the decisions of a person with final policymaking authority; (3) an omission, such as failure to train, that manifests deliberate indifference; and (4) a practice that is so persistent and widespread as to constitute a custom or usage with the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). As to the second avenue, "[a]uthority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority, and . . . whether an official had final policymaking authority is a question of state law." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

Importantly, *Monell* liability is derivative of an underlying constitutional violation. A municipality cannot be held liable under *Monell* if no constitutional violation occurred. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Because no underlying constitutional violation occurred here, there can be no *Monell* liability. *See Wilson v. Town of Mount Jackson*, No. 5:21-

20

CV-00055, 2022 WL 819531, at *15 (W.D. Va. Mar. 17, 2022) (finding no basis for *Monell*

liability where individual officer defendants did not violate plaintiff's rights). The question of

whether the School Board or Superintendent Russ was the final policymaker is therefore moot.

### D.  State Constitutional Claims

In addition to failing on the merits, Delosreyes's claims under Article I, §§ 11 and 12 of

the Virginia Constitution against the School Board and Russ fail for additional reasons.

#### 1.  Sovereign Immunity

Virginia school boards enjoy sovereign immunity. *Roach v. Botetourt Cnty. Sch. Bd.*, 757

F. Supp. 2d 591, 594 (W.D. Va. 2010) (citing *Linhart v. Lawson*, 540 S.E.2d 875, 878 (Va.

2001)). Sovereign immunity can be waived, but waiver must be explicitly and expressly stated.

*Gray v. Virginia Sec'y of Trans.*, 662 S.E.2d 66, 71 (Va. 2008) (citation omitted).

Virginia has not enacted legislation waiving sovereign immunity or creating a damages

remedy for state constitutional violations. Without clear legislative waiver, sovereign immunity

bars Delosreyes's damages claims against the School Board.

Delosreyes argues that because Art. I, § 12 of the Virginia Constitution is co-extensive

with the First Amendment of the U.S. Constitution, an implied right of action for damages exists

under § 12 if Delosreyes's First Amendment claim is viable. This argument is unpersuasive. In

*Ibanez v. Albemarle Cnty. Sch. Bd.*, 897 S.E.2d 300, 311–12 (Va. App. 2024), the Virginia Court

of Appeals held that Art. I, § 11 (due process) and § 12 (free speech) of the Virginia Constitution

are self-executing. However, the court explicitly declined to determine whether these provisions

support claims for money damages. *Id.* at 312. The federal analogue is also instructive: The First

Amendment is self-executing, but standing alone it does not create a damages action against

states. Rather, 42 U.S.C. § 1983 provides the damages remedy for federal constitutional

violations, and Virginia has no equivalent statute.

Delosreyes cites *McCaffrey v. Chapman*, No. 117CV937AJTIDD, 2017 WL 4553533, at *5 (E.D. Va. Oct. 12, 2017), *aff'd*, 921 F.3d 159 (4th Cir. 2019), which suggested an implied damages remedy might exist for Art. I, § 12 claims because the provision is co-extensive with the First Amendment. However, *McCaffrey* specifically noted that "[t]he scope of relief under these 'self-executing' provisions of the Virginia Constitution is an unsettled question, as the Supreme Court of Virginia has never recognized an implied cause of action for damages under Article I, Section 12." *Id.* The court then declined to predict how the Supreme Court of Virginia might decide the issue. *See id.* Delosreyes also cites *Hampton Roads Sanitation District v. McDonnell*, 360 S.E.2d 841 (Va. 1987), but that case is distinguishable. *Hampton Roads* involved Art. I, § 11's specific provision about compensation for property takings: "No private property shall be damaged or taken for public use without just compensation to the owner thereof." The Constitution explicitly provides for "just compensation"—a damages remedy is built into the text. By contrast, Art. I, §§ 11 and 12 contain no language providing for damages.

Without a clear legislative waiver, sovereign immunity bars Delosreyes's state constitutional damages claims against the School Board.

### 2. Private Right of Action

Delosreyes also brings her state constitutional claims against Russ in his individual capacity. Because Virginia law does not provide a private right of action for violations of the Virginia Constitution, Delosreyes cannot recover damages from Russ for alleged state constitutional violations.

### IV. Conclusion

For the reasons above, Defendants' Motion for Summary Judgment (Dkt. 87) is **GRANTED**. All claims are **DISMISSED** with prejudice.

Entered:  February 13, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge